IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


ROBERT LEE SANDERS
ADC # 131332                                                                                          PLAINTIFF


v.                                          5:07-cv-00262-SWW-JJV


PETER EDWARDS, Dr., Mental Health,
Arkansas Department of Correction; and
BEN GUISE, Dr., Mental Health, Arkansas
Department of Correction                                                                           DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

### **I. PROCEDURAL HISTORY**

Plaintiff, an inmate in the custody of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need. Specifically, Plaintiff alleges he was unconstitutionally denied adequate mental health care. Plaintiff made a timely demand for a jury trial; however, before expending the resources inherent in such a trial, the Court held a pre-jury evidentiary hearing to determine whether this case should proceed to a jury trial. The Court conducted a pre-jury hearing on September 29, 2008, and the defendants originally named by Plaintiff in his complaint (Doc. No. 2) were dismissed. The Court dismissed those defendants claims because none of them could reasonably be considered to have been involved in any aspect of decision-making about Plaintiff's treatment. However, during the hearing, Plaintiff provided additional information about potential claims against medical doctors who were contract employees of Correctional Medical Services (CMS) and provided treatment to the ADC. In light

of Plaintiff's testimony, the Court allowed Plaintiff to add as Defendants Doctors Peter Edwards and Ben Guise. The dismissal was adopted and the two new defendants were served. On January 12, 2010, the Court conducted a second pre-jury hearing to address Plaintiff's allegations against Dr. Edwards and Dr. Guise. After carefully considering the evidence in this matter, including Plaintiff's testimony, the Court makes the following recommendation:

## II. PLAINTIFF'S ORAL MOTION TO DISMISS AND REQUEST FOR COURT TRIAL

During the course of the proceedings Plaintiff moved to dismiss his claims against Dr. Guise and requested a court trial rather than a jury trial. Plaintiff stated he believed Dr. Guise had provided him adequate care and he only wished to name Dr. Guise as a witness. Accordingly, the undersigned recommends that Plaintiff's request and Defendant's Motion for Summary Judgment (Doc. No. 202) be GRANTED, and Dr. Guise be dismissed as a party defendant. Plaintiff's request for a court trial was granted at the pre-jury hearing.

## III. FACTS

Plaintiff's complaint, filed on October 12, 2007, and its accompanying exhibits, state he had been denied mental health care while housed at the Grimes Unit and the North Central Unit. According to Plaintiff, he has been on some form of psychotropic medications for much of his adult life. He explained that before his arrest and incarceration, he received social security disability benefits because of his diagnosis of schizophrenia. Plaintiff further explained mental difficulties resulting from a head injury and two brain surgeries in his youth.

At the time of arrest Plaintiff was prescribed Zoloft, Paxil, and Trazodone, and medical records submitted by Plaintiff also indicate he was prescribed Klonopin, Effexor, Zyprexa, and triazolam. Plaintiff added he had previously attempted suicide and had been committed to "Charter" and the State Hospital at various times before his incarceration. Plaintiff did receive his medications

3

during his time as a pre-trial detainee, but upon his commitment to the ADC his treatment was greatly altered.

At first, Plaintiff was satisfied with his care and praised the efforts of Dr. Guise in helping him continue on his medications. However, when he was transferred to the North Central Unit in Calico Rock, Arkansas, psychotropic drugs were not available for prescription to the inmates because the unit did not have a psychiatrist available to monitor their care. North Central Unit inmates could really only receive mental health treatment by requesting a visit to the Grimes Unit in Newport, Arkansas, to see the psychiatrist who traveled to that facility. Plaintiff was initially prescribed Trazodone, but an unidentified CMS doctor at the central office "threw a fit" and discontinued Plaintiff's medication.

Later Plaintiff saw Dr. Edwards, a psychiatrist, "quite a few times - eight to ten times." Plaintiff testified that while he was "not sure" if Dr. Edwards discontinued his prescription of Trazodone, Dr. Edwards kept him off the medication. Only after Plaintiff was transferred to another unit was he again prescribed medication. Plaintiff is currently taking Zoloft and has counseling available to him, and is generally satisfied with his treatment. By way of damages he seeks $3,000.00 for the time he spent without medication, and to continuation of his current course of treatment.

During the hearing, the defense provided several of Plaintiff's psychiatric treatment records. On May 4, 2007, Plaintiff was seen by Ravi Mehta, M.D., a psychiatrist, at the Tucker Unit. *See* Defendant's 1/12/10 Hearing Exhibit 1. Dr. Mehta's diagnosis was "alcohol dependence by history, personality disorder nos [not otherwise specified]," and he found no "evidence of depression or psychosis." Dr. Mehta also opined that not "any kind of medication" would help Plaintiff because of his "primary personality traits," and it appears from this report that at that time Plaintiff did not

4

want to take Trazodone. The recommendation was a follow up in six months. *Id.*

Six months later, at the North Central Unit, Plaintiff was evaluated by another psychiatrist, Dr. Shawn Richard, who reported that Plaintiff wanted to resume Trazodone. Dr. Richard noted that Plaintiff complained of "feel[ing] like I have something crawling over me" and unspecified paranoia. Dr. Richard's objective evaluation of Plaintiff found "no overt psychotic symptoms." *See* Defendant's 1/12/10 Hearing Exhibit 2. Plaintiff appeared to have "self-mutilated" in "an attempt to put on some type of show today" with a possible motivation of "maybe drugs, maybe a transfer to another unit, for whatever reason I could not see any evidence of any depression [or] anxiety." Diagnosis was "none" for Axis I, "antisocial personality disorder" for Axis II, with a recommendation that Plaintiff follow-up with the clinic as needed. *Id.*

Six months later Plaintiff was again evaluated by Dr. Edwards who, at that time, served as the Psychiatric Director for CMS. In his report, Dr. Edwards noted that Dr. Guise had diagnosed Plaintiff with "Mood disorder secondary to a head trauma[;] this is not a diagnosis that I would concur with... ." *See* Defendant's 1/12/10 Hearing Exhibit 3. The report notes that Dr. Guise previously prescribed Trazodone for Plaintiff, but that is "not an antidepressant that is currently used in the Department of Correction due to the fact that it has priapism as a side effect and also due to the fact that it is very sedating[,] basically used as a sleeper." In his comprehensive report, Dr. Edwards stated that upon examination at the Diagnostic Unit in 2004, Dr. Kittrell did not continue Plaintiff on any of the lengthy list of psychotropic medications he was taking upon arrival at the ADC. Dr. Edwards diagnosed Plaintiff as "malingering" with no signs or symptoms of any "treatable mental illness" and found "no indication that this man should be on any sort of medication at this point." *Id*.

Dr. Edwards saw Plaintiff again the following month (Defendant's 1/12/10 Hearing Exhibit

4) at the East Arkansas Regional Unit. Plaintiff continued to request Trazodone but was denied. Finding he was "not impaired, [not] depressed, no indication of anxiety, no indication of psychosis," Dr. Edwards made no recommendations for any further treatment of Plaintiff. "I think this man... has a personality disorder but that is not going to be treatable by medication." *Id.*

The final report introduced into evidence was dated December 11, 2008, prepared by Dr. Shawn Richard, a psychiatrist at the Grimes Unit (Defendant's 1/12/10 Hearing Exhibit 5). Dr. Richard concluded that Plaintiff suffers from "a severe character logical disorder," but did appear open to treatment other than Trazodone, even though he was "adamant . . .[Trazadone] was the only drug to help him." Noting it was unlikely "to do any good," Dr. Richard did place Plaintiff on the antidepressant Zoloft, which Plaintiff reports he is still taking.

## IV. ANALYSIS

### A. Eighth Amendment

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 831-32 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). An Eighth Amendment violation occurs only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)(citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those

needs are 'serious.'" *Id.* (*citing Estelle*, 429 U.S. at 103-04).

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)(insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997)(*citing Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997), and *Beyerbac*h, 49 F.3d at 1326); *see also O'Neil v. White*, 221 F.3d 1343, 1343 (8th Cir. 2000)(*citing Crowley*, 109 F.3d at 502).

To meet the second requirement, the "subjective" component of an Eighth Amendment claim, the defendant must have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297-303 (1991); *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-303; *Estelle*, 429 U.S. at 106. Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993).

7

"As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(quotation omitted); *see also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(stating that prisoners "do not have a constitutional right to any particular type of treatment[,]" and "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment").

        1.        Deprivation of an Objectively Serious Medical Need

As is required in the pre-jury hearing process, the Court fully credits Plaintiff's testimony and finds that he has shown the deprivation of treatment for an objectively serious medical need. While Mr. Sander's psychiatric treatment records from the ADC diminish his objective claims, the Court must give full credit to Plaintiff's testimony. Based on his testimony, Mr. Sanders has serious difficulty when denied the requested medication and receipt of this medication greatly improves his condition. Accordingly, Plaintiff has met the first requirement.

### i. Deliberate Indifference to Plaintiff's Serious Medical Needs

While some of Plaintiff's psychiatrists have prescribed the medications he sought, his treatment records prove a disagreement in treatment rather than a deliberate indifference to Plaintiff's serious medical needs. A disagreement in treatment does not establish a constitutional violation. *See Noll v. Petrovky*, 828 F.2d 461, 462 (8th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988)(stating that disagreement between physicians regarding treatment "raises question of medical judgment; it does not show deliberate indifference"). Defendants "do not violate the Eighth

Amendment when in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009)(quoting *Long*, 86 F.3d at 765).

Accepting without reservation Plaintiff's statements with regard to his need for psychotropic medication and the corroborating findings from his Social Security disability determination, Plaintiff can only prove a disagreement with Dr. Edwards' treatment. Plaintiff's treatment records show that Dr. Edwards was in fact very deliberate in his care of Plaintiff. He provided a very comprehensive report detailing his evaluation and the specific reasons why he chose his course of treatment. Moreover, the other treating physicians made findings similar to Dr. Edwards. Even if Dr. Guise had testified that he believed Plaintiff needed Trazodone and it was a mistake to take him off of the drug, this would still only present a disagreement with treatment. *See Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)(concluding that defendant had no duty to give plaintiff medications prescribed by a psychiatrist who was no longer treating plaintiff without consulting the physicians responsible for the care of Detention Center inmates and stating that plaintiff had proved "nothing more than a disagreement as to the proper course of treatment, which is not actionable under the Eighth Amendment"). *See also McWhite v. Cowin*, No. 06-4182-CV-2-SOW, 2009 WL 249792 (W.D. Mo. Feb. 3, 2009)(plaintiff's argument that he had at one time been determined eligible for Social Security disability and at different times had been prescribed psychotropic medications fails to show that reliance on a medical professional's evaluation that plaintiff did not require psychiatric treatment at that time was improper or constituted deliberate indifference to his health.)

Accordingly, the undersigned recommends a finding that there are no genuine issues of material fact remaining and Defendant Edward is entitled to judgment as a matter of law.

## V. CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1. Dr. Guise's Motion for Summary Judgment (Doc. No. 202) and Plaintiff's motion for voluntary dismissal of Dr. Guise be GRANTED;

2. The Court finds there are no genuine issues of material fact remaining and Dr. Edwards is entitled to dismissal of the claims against him; and

3. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 25th day of January, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE